# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | Case No. 1:07CR00023 |
| v. ) | |
| ) | **OPINION** |
| **DAVID ALLEN RILEY**, ) | |
| ) | By: James P. Jones |
| Defendant. ) | Chief United States District Judge |

*Jennifer R. Bockhorst, Assistant United States Attorney, Abingdon, Virginia, for United States; David A. Riley, Pro Se Defendant.*

The defendant, a federal inmate, brings this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.A. § 2255 (West 2006). Upon review of the record, I find that the government's Motion to Dismiss must be granted because the defendant waived his right to collaterally attack his sentence.

I

On December 18, 2006, a fire broke out in a federally-subsidized housing complex for elderly and handicapped individuals in Damascus, Virginia.[1]

---

[1] This summary of the evidence against Riley is taken from his Presentence Investigation Report and guilty plea hearing.

Investigators later determined that the fire started in Apartment 309, where the defendant, David Allen Riley had been staying with his girlfriend for several months. The fire activated the sprinkler system throughout the complex, causing extensive water damage and the evacuation of 60 residents, including small children. Firefighters, in the course of sweeping the building to look for residents who needed assistance, observed Riley leave Apartment 309 with a container of materials, go down a back staircase and out of the building.[2] When they checked the apartment to be sure that it was empty, they found several inches of water on the floor, scorch marks on the wall near the stove, and floating in the water, numerous matches with the striker plates removed. Knowing that matches with the striker plates removed are often a sign of methamphetamine manufacturing, the firefighters called a hazardous materials team to the scene.

In the woods next the apartment complex, agents later recovered a number of items and chemicals used in the manufacture of methamphetamine, including mason jars containing red phosphorous, acetone, alcohol, butane fuel, matches, and coffee filters. Located near these items in the woods, they also found mail addressed to Riley. After arresting Riley, authorities entered his apartment and noticed a strong odor which was consistent with the making of methamphetamine. A search of the

---

[2] Riley claims that he left the apartment carrying his guitar case.

residence revealed numerous other items used in the manufacturing of methamphetamine. The apartment complex had a playground located within 1000 feet of the apartment and within 500 feet of the location where the precursor materials were found in the woods.

In an interview with DEA agents on the day of the fire, Riley acknowledged that he had used methamphetamine that day in the apartment and that he had manufactured methamphetamine using the red phosphorous method. Riley denied that he was attempting to manufacture methamphetamine on the day of the fire. He claimed that a coffee carafe on the stove had started the fire, and investigators found such a carafe with its handle melted, consistent with its having been the source of the fire.³ Officers would have testified that it is not unusual to use coffee pots or similar items on a stove top to prepare precursor chemicals for the manufacture of methamphetamine and that the number of precursors found in this case would have allowed for the manufacture of at least fifty grams of methamphetamine.

A grand jury returned a two-count Indictment on April 3, 2007, charging that Riley manufactured and attempted to manufacture 50 grams or more of methamphetamine between September 2006 and December 18, 2006, within 1000

---

³ Riley now claims that the fire started while he was attempting to fry food in a deep fat fryer.

- 3 -

feet of a playground, in violation of 21 U.S.C.A. § § 841(a)(1), 846, 860, and 841(b)(1)(B) (West 1999 & Supp. 2008) (Count One), and while manufacturing and attempting to manufacture methamphetamine, he created a substantial risk of harm to human life, in violation of 21 U.S.C.A. § 858 (West 1999) (Count Two). The government filed an Information to Establish Prior Convictions, pursuant to 21 U.S.C.A. §851 (West 1999), alleging that Riley had two prior drug trafficking convictions.

Riley pleaded guilty on May 30, 2007, to Count One, pursuant to a written Plea Agreement. In exchange for the plea, the government agreed to dismiss Count Two of the Indictment and one of the two convictions from the § 851 Information. The parties also stipulated to a Base Offense Level of 26 as established under the United States Sentencing Guidelines Manual ("USSG"), although the government reserved its right to move for an upward departure. Riley agreed to pay restitution "based on the entire scope of [his] criminal conduct, not just the charges to which [he] was pleading guilty," to be responsible for the cost of "the clean-up of hazardous items associated with the manufacture of methamphetamine at the [apartment complex] and also for the costs incurred by the owners of the [apartment complex] for repair of the damage caused by the manufacture of methamphetamine and the resulting fire." (Plea Agreement, pt. A, ¶ 8). Riley also waived his right to appeal and his right to

collaterally attack the conviction and the sentence to be imposed. Riley was sentenced on August 1, 2007, to the statutory mandatory minimum of 120 months imprisonment, plus sixteen years of supervised release. He was also ordered to pay restitution of $8150.

Riley thereafter filed this § 2255 motion. The government has filed a Motion to Dismiss, arguing that all claims must be dismissed as waived. Riley has responded, making the matter ripe for disposition.

Riley alleges that his attorney provided ineffective assistance in the following respects:

1. She failed to provide him an opportunity to review the discovery materials;

2. She failed to have any meaningful discussion with him about the facts of the government's case against him or to listen to his explanations of those facts;

3. She did not discuss the elements of the charges or the elements of possible defenses to those charges;

4. She did not advise him that the government's evidence was insufficient to prove that he had run a methamphetamine lab in the apartment or to prove a "substantial step" in the manufacturing process so as to support his conviction for attempting to manufacture the drug;

5. She failed to advise him that the restitution he was ordered to pay was "only an issue if the damage caused was a direct result of the criminal conduct for which [he] was charged";

- 5 -

6. She failed to advise him that the two prior offenses charged in the § 851 Information could only count as one conviction because they were rendered simultaneously, such that he received no benefit from dismissal of one charge from the Information as an element of the Plea Agreement;

7. She failed to object to the government's assertion that the crime occurred within 1000 feet of a playground so as to subject defendant to a more severe sentence;

8. She inaccurately advised him that in order to benefit from the Plea Agreement and in order to be eligible for a drug treatment program by which to reduce his term of confinement, he should admit to the Probation Officer that he had made at least ten grams of methamphetamine; and

9. She failed to move for withdrawal of his guilty plea, based on later obtained evidence that the chief of police of the jurisdiction where defendant was arrested was himself charged with several counts of methamphetamine-related crimes.

II

To state a claim for relief under § 2255, a federal defendant must prove that one of the following occurred: (1) His sentence was "imposed in violation of the Constitution or laws of the United States"; (2) The "court was without jurisdiction to impose such sentence"; or (3) The "sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C.A § 2255(a). In a § 2255 motion, the defendant bears the burden of proving grounds for a collateral

attack by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir.1958).

It is settled circuit law that a "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). Whether the waiver is knowing and intelligent depends "upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused." *United States v. Davis*, 954 F.2d 182, 186 (4th Cir. 1992) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). When a defendant alleges that ineffective assistance of counsel caused the guilty plea itself to be unknowing or involuntary, analysis of such claims must be part of the court's inquiry into the validity of the guilty plea and the plea agreement waiver of § 2255 rights. *See, e.g., Lemaster*, 403 F.3d at 221-22; *Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir.1999) ("Justice dictates that a claim of ineffective assistance of counsel in connection with the negotiation of a cooperation agreement [waiving § 2255 rights] cannot be barred by the agreement itself—the very product of the alleged ineffectiveness."). *See also Hill v. Lockhart*, 474 U.S. 52, 53-59 (1985) (finding that court may address ineffective assistance claims bearing on validity of guilty plea, even concerning matters that would ordinarily be waived by entry of plea).

The court's waiver analysis must focus first on the defendant's statements during the plea hearing. "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Lemaster*, 403 F.3d at 221-22. If the court determines that the defendant's allegations, viewed against the record of the Rule 11 plea hearing, are so "palpably incredible, so patently frivolous or false as to warrant summary dismissal," the court may dismiss the § 2255 motion without a hearing. *Id.* at 220 (internal quotations and citations omitted). After determining that statements made during the plea hearing indicated that the defendant had entered a valid guilty plea and waiver of his § 2255 rights, the court in *Lemaster* addressed the defendant's ineffective assistance claims only to the extent that they had some alleged bearing on the validity of the plea. *Id.* at 222-23. The court found that the defendant's allegations contradicted his sworn statements at the plea hearing and, accordingly, upheld the validity of the § 2255 waiver and dismissed all claims as waived. *Id.* at 223. In other cases, however, determining the validity of the § 2255 waiver will require addressing on the merits the defendant's claims that counsel's ineffective assistance caused his plea to be invalid in some respect.

To prove that counsel's representation was so defective as to require reversal of the conviction or sentence, a defendant must meet a two-prong standard, showing that counsel's defective performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the defendant must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. *Id.* at 687-88. The defendant must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. *Id.* at 689.

Second, to show prejudice, the defendant must demonstrate a "reasonable probability" that but for counsel's errors, the outcome would have been different. *Id.* at 694-95. When the defendant alleges that counsel's error led him to enter an invalid guilty plea, he can show prejudice only by demonstrating "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58-59. If it is clear that the defendant has not satisfied one prong of the *Strickland/Hill* test, the court need not inquire whether he has satisfied the other prong. *Strickland*, 466 U.S. at 697.

# III

## A. Riley's Valid Guilty Plea and Waiver.

Before accepting Riley's guilty plea on May 30, 2007, I questioned him thoroughly to ensure that his plea was knowing and voluntary. Riley indicated that he was forty-four years old and had completed the twelfth grade in school. He stated that although he had been treated in the past for substance abuse, he was not under the influence of drugs or alcohol and had no health problems.

Riley affirmed that he had had adequate time to discuss the Indictment, the case, and the Plea Agreement with counsel and that he had initialed each page of the plea agreement and signed it, indicating that he had read and understood its terms. He affirmed that he was fully satisfied with counsel's representation. He then indicated that he understood the terms of the Plea Agreement as summarized by the prosecutor. I specifically asked Riley if he understood the provisions waiving his right to appeal and his right to bring a collateral attack under § 2255. He indicated that he did. He denied that anyone had tried in any way to force him to plead guilty.

I reviewed the rights Riley was waiving by pleading guilty, explained in detail the elements of the charge that the government would have to prove if he went to trial, and heard a summary of the evidence in support of the plea. When asked if he was pleading guilty because he was, in fact, guilty of the conduct charged in Count

- 10 -

One, Riley affirmed that he was. I find now, as I did at the plea hearing, that Riley's guilty plea and the waivers of his right to appeal and his right to bring this collateral attack under § 2255 were knowing and voluntary and therefore, valid.

### B. COUNSEL'S ALLEGED ERRORS.

In Claims 1 through 7, Riley asserts that his counsel's alleged failings in investigating and explaining the elements of the case to him caused his guilty plea and his waiver of § 2255 rights to be unknowing and invalid. These claims are based on assertions that are directly contradicted by his statements to the court. He stated at the guilty plea hearing that he was fully satisfied with counsel's representation and did not mention any defense or evidence that counsel had failed to investigate, any discovery materials counsel had not shown him, or any element of the case that counsel had not discussed with him before advising him to accept the plea agreement. Riley expressly stated that no one had "forced" him to plead guilty and that he understood the elements of the offense that the government would have to prove at trial. Indeed, I advised him of these elements. The Plea Agreement itself advised him that the restitution he agreed to pay was associated with his entire criminal conduct, not only the offense to which he was pleading. As Claims 1 through 5 and 7 directly contradict Riley's testimony during the plea hearing, under oath, I find them to be "palpably incredible" so as to warrant summary dismissal.

In any event, Claims 1 through 7 are without merit, as Riley fails to meet his burden of proving defective performance and prejudice by a preponderance of the evidence. He alleges that counsel advised him to accept the Plea Agreement because given the nature of the offense and the publicity it had received, he was likely to be convicted at trial and sentenced to fifteen years or more in prison. Yet, Riley fails to present facts indicating that this advice was inaccurate in any way. Riley does not point to any particular piece of evidence or defense that counsel should have discovered through additional, more in-depth discussions with her client. Although he asserts that the government's evidence was not sufficient to prove that he had run a methamphetamine lab, he does not dispute the evidence that numerous materials discovered in the apartment and in the woods were consistent with the manufacture of methamphetamine. He offers no specific piece of evidence with which counsel could have argued that the drug activity did not occur within 1000 feet of a playground.

Moreover, Riley is mistaken in his belief that the two convictions listed in the § 851 Information together counted as a single conviction because they issued on the same day. These two convictions were for separate acts of distribution of a controlled substance on two different dates, so they could have been counted separately for purposes of enhancing Riley's statutory mandatory minimum sentence. *See, e.g.,*

*United States v. Blackwood*, 913 F.2d 139, 147 (4th Cir. 1990) (rejecting defendant's argument that "related cases" as defined in USSG § 4A1.2 for purposes of computing a criminal history category controls when counting prior convictions for purposes of sentence enhancement).

In short, Riley presents no specific facts on which he could prove that counsel's investigation and explanations were deficient or show any reasonable probability that absent counsel's alleged omissions, Riley would have successfully negotiated a more favorable plea bargain or would have rejected the Plea Agreement and insisted on proceeding to trial. He demonstrates no reasonable probability that he could have won full acquittal at trial; if convicted, Riley would have been ordered to pay the restitution and would have received a higher sentence without any reduction in offense level for acceptance of responsibility. Because Riley fails to show prejudice under *Strickland*, Claims 1 through 7 fail on the merits.

Finding no ineffective assistance, I also find that Riley fails to offer any reason that his plea agreement waiver of his right to bring this action is invalid in any respect. Claims 8 and 9 do not bear on the validity of Riley's guilty plea or waiver,[4]

---

[4] Riley fails to make any showing that any drug charges brought against the chief of police were in any way related to the government's case against Riley or that earlier knowledge of the charges against the chief would have persuaded Riley to reject the benefits of his Plea Agreement.

- 13 -

Case 1:07-cr-00023-JPJ-mfu   Document 57   Filed 02/05/09   Page 13 of 14   Pageid#: 226

and neither of these claims falls within any of the recognized exceptions to a valid waiver of § 2255 rights. Therefore, I will grant the Motion to Dismiss.

A separate Final Order will be entered herewith.

ENTER: February 5, 2009

/s/ JAMES P. JONES
Chief United States District Judge